I've got eight minutes, reserving two minutes for rebuttal. Your Honors, given the limited time, I'd like to move directly into the legal issue that's before this court, which is with respect to the First Amendment claim and qualified immunity. It's the position of Mr. Roberts as well as Jefferson Parish that the district court erred as a matter of law in applying the wrong standard with respect to qualified immunity. Specifically, it's important to note in a factual finding of this court, the court found that Mr. Heaney's behavior at the parish council meeting was both argumentative and confrontational. And yet, with those findings, the court usurps and says, we need to go to the subjective intent. But yet, the federal court as well as this circuit and the US Supreme Court have all found that it's an objective, reasonable standard with respect to the application of qualified immunity. So in this case, we have the record evidence in the video that everybody can review and see. There's no outside extraneous facts in this case. And looking at that video, the court had decided that it was confrontational argumentative. And it is established in the law that when you have a confrontational and an argumentative individual, that the law allows restrictions on that type of speech in a limited public forum, which it's undisputed in this case, was the Jefferson Parish Council meeting. In a limited public forum, you're allowed to have reasonable viewpoint neutral restrictions placed on speech. And in this particular case, we have an individual that was speaking. He was granted the authority to speak at a public meeting. And he was allowed to go on for three minutes and 23 seconds, where he voluntary acquiesced and allowed a parish attorney to go ahead and present a different point. It's important to know for this court, and I think lost on the district court respectfully, was that when Mr. Heaney asked for his time back, Mr. Roberts, who was the chair and the moderator, said the words yes, which means that at that point in time, his speech was not being curtailed. He said yes. And it was only when he looked at it to try to determine and ascertain how much additional time the individual would have that Mr. Heaney raised a document in his hand and said, I challenge the parish attorney. And it was at that moment in time that Councilman Roberts said to the individual, this is not the forum. So it wasn't a viewpoint restriction. He was saying that that forum is not the type of place where you're allowed to challenge a parish attorney. And the court in the Wendholdt decision, which was affirmed, found that an individual is not entitled to rebut the views of other speakers. And that's precisely what Christopher Roberts did here. He said that you may address this issue that's on the agenda, but what you cannot do is you cannot rebut and berate an individual that was speaking to the parish attorney. So with respect to this particular case, because the court found confrontational and argumentative behavior on the part of Mr. Heaney, it is then inconsistent to find that the law for qualified immunity is clearly established that you cannot remove and ask and be escorted out a confrontational argumentative individual. If this court Was he confrontational and argumentative, or did he just say, I want to contradict what the city attorneys just said? Well, I would submit to you that he was argumentative and confidential. And I think the fact that the district court found that to be the case to then rule that the law is not clearly established is inconsistent. And also, Your Honor, is speaking to that point in the White v. City of Norwalk, which is the Ninth Circuit out of 1999, they give great discretion afforded to the moderator in making that determination as to whether an individual is disruptive or not. And in this case, that decision, and that's why qualified immunity shields liability in these types of actions, because of the potential for harassment and unduly burdensome litigation that public officials must have to do with stifles, public debate, and public forum. And in this particular case, I think that because the court found an argumentative and confrontational behavior, he continued to speak when Mr. Roberts said, hold on a minute, and was addressing it. It's the nature of what he was saying with respect to the forum, which is why the speech was restricted, and not because he disagreed with the contents of what he was saying. And I think that, moreover, if you look at it, he said, yes, you're going to get your time. And it was only when he was addressing the forum issue about what could be addressed at that particular forum. And that's the whole point of a limited public forum, is that the moderator gets to decide what gets to be addressed at that forum. And if he was going to begin to speak on the agenda item for that day, that was appropriate. But when he wanted to challenge another speaker, that was the reason for the restriction. And it's for these reasons that we respectfully believe that the court went beyond what it was allowed to do under precedence of this law and the Supreme Court decisions on qualified immunity. This is precisely the type of case that fits in to where you don't want public officials to be unduly burdensome with needless litigation. This is a case where we're talking about a total of one minute and 37 seconds, and we've got countless people. So had he let him speak for a minute and a half, we wouldn't be here today. I don't disagree with you, Your Honor, but he is given the authority as the moderator to address the civility and decorum of a proceeding. And in this particular case, that should be given deference with respect to qualified immunity. This court, as well as the US Supreme Court, has said that they disfavor finding qualified immunity not to apply in cases where the law isn't clearly established. So this court need only look to find out whether it is beyond debate, beyond cavel, that an individual that's being argumentative and combative cannot be removed from a public hearing. And I think that's fair. What was the argumentative and combative, I guess my question, simply because he was speaking on something that the person that was running the show thought was not the right forum for it? But was he combative and argumentative? It's one. It's in a public meeting, raising your paper, and saying, I challenge the parish attorney. That, again, with deference to the moderator. Why can't you say that? I'm sorry? Why can't you say that at a public hearing? Again, Your Honor, it is, well, one, it is disrespectful for an individual to be giving a challenge to an individual. Disrespectful is a whole lot different from. Again, the moderator is given great deference to determine whether that civility, if you look at the Fairchild decision and the White decision, both of those courts find that the moderator gets to decide regarding civility and decorum of a proceeding. And again, the Councilman Roberts even addressed this. And so you can just look at the video. He said the appropriate forum would be to go down and file a lawsuit against us if you think what we're doing is not appropriate. But you cannot sit here and rebut the views of another speaker. And that's what he was intending to do. And that's why there was no constitutional. I think that was Judge Pado's question. There may be a disagreement about what the topic is. But how is that combative? How is it combative? Again, those are the words from the district court, was that he found that the nature of what Mr. Heaney was doing was both combative and argumentative. And that's where we find the inconsistency, because we believe that the law provides when an individual, in fact, is combative or argumentative, that constitutional curtailments can be placed on that type of speech. And if you have an individual that is speaking over somebody, waving papers and handing in a public meeting, that's the type of speech that gets to be restricted under the law. And specifically with respect, he wasn't saying I disagree with the block grants. He's saying I disagree with the parish attorney. And I think that's why Christopher Roberts felt that this wasn't the appropriate point. With the viewpoint of the parish attorney. Well, with respect to this being the forum as to whether you could challenge the parish attorney, and that's where the disagreement is, is that he was able to speak on HUD grants, and in fact, for 3 minutes and 23 seconds, in fact, did so. And he was able to give his opinion, which wasn't any different than what he had tended to do later on. It's the fact that he was seeking to address the parish attorney, which was the inappropriate forum. And for those reasons, we respectfully  Thank you. Mr. Levinson. Good morning. May it please the court. My name is Leonard Levinson. I, along with Christian Helmke, represent the defendants in this matter, Officer Ronald Black and the city of Gratina. Like the parish and Councilman Roberts, we too are appellants and appellees in connection with this. I too will not go into the facts. I think they're pretty clear. They're pretty much undisputed. And I think they speak for themselves. We believe that the trial court was correct when he dismissed the First Amendment, Fourth Amendment claims against Officer Black as a result of his escorting Mr. Haney from the council chambers based upon the direct request and order of the council chairman. The court in its decision found that, in fact, Mr. Haney was seized, as contemplated by the Fourth Amendment, that the seizure was lawful, that Officer Black's actions were reasonably justified, and specifically, the district court held that the seizure was brief, minimally intrusive, and reasonable under the totality of the circumstances. The judge said that he did not believe that Officer Black violated any clearly established statutory or constitutional right, and he relied upon two decisions, Collinson versus Goddard, Fourth Circuit, 1991 decision, and Osborne versus Laura Robinette, a district court decision out of the Southern District of West Virginia, 2006. In both of those cases, similar factual patterns existed, and the police officers and security guards were instructed to escort the individuals from the meeting room, and they were granted qualified immunity. Judge Haney stated that the law is not settled that removing a citizen from a public meeting, based upon the chairman's judgment that the citizen was disrupting the meeting, requires probable cause to believe the crime was committed. He went on to say that no officer in Black's position would have understood that acting in obedience to a presumptively valid request by the council chairman to remove a citizen following an argumentative exchange with a council member would violate a citizen's First Amendment rights. I think it is somewhat implausible and unreasonable to expect that the Sergeant-at-Arms of the meeting, Officer Black, would have disputed or argued with Councilman Roberts his decision whether or not Mr. Haney had been disruptive or combative or should be removed from the council chambers. I think it would lead to chaos if one would suggest that police officers charged with security in council meetings would then engage in argument with the individual asked them to be removed. I believe that Judge Haney was correct in granting qualified immunity to Officer Black in that regard. However, I do believe that Judge Haney was incorrect in denying summary judgment to Officer Black with respect to the charge of battery. I believe that the law is clear, particularly in this instance, that police officers allowed to use reasonable force in connection with dealing with the arrest or the detention of an individual, either as an arrest. What was the fall-down scenario? How did that come about, where they fell down? I don't think we know, Judge. Unfortunately, that's where the video camera does not catch the activity. It's gonna be a factual dispute as to whether he intentionally fell down or he accidentally fell down or he was pushed down. I don't think anyone knows for certain what happened. There is a factual... That's the potential battery, I would imagine, that District Judge was considering. Well, Judge, but if part of that was during the course of ejecting him from the council chambers and it was not determined to be excessive force, which it was not, then I believe that it was covered from the standpoint of the battery defense and summary judgment should be granted. Now, the negligence part may be another thing for us to address in a few minutes, but if I think during the course of his being detained and ejected, okay, he was injured and it wasn't excessive force, then I think summary judgment is proper. We cited in our brief two district court decisions, one out of the Eastern District by Judge Lemon, one out of the Western District, I believe, by Judge Trimble, and basically, what the courts analyzed in that situation, they said, well, if the police officers were acting reasonable in the totality of the circumstances, even though they applied force, if the force was not excessive force, then the battery claim must fall, and I agree with that, Judge, and Judge Zaney did not find that there was any excessive force here. In fact, he found quite to the contrary. Why'd they call the ambulance? Judge, to be honest with you, I'm not sure who called the ambulance. I think there's some dispute as to whether court security called the ambulance at his request or whether he called the ambulance, but an ambulance was called, and when he walked out, when he was free to go, and he walked out of the building, he went to the ambulance and was examined, I think, for several minutes, and then he was released from the ambulance, or he left the ambulance. We don't know at this point in time what damages are being related to the battery and what damages are being related to negligence, because we had agreed that discovery would not go into his medical condition and injuries until we determined whether or not there was any liability. I believe if you read his declaration, I believe his claims of injury result to the battery of grabbing him by the arms and his bruises on his arms more than the falling down or falling on top of him or any negligence. Now, are those state claims? Yes, sir. Does this court have jurisdiction to review those claims? I mean, we have qualified immunity, which is a federal situation, but these are state battery claims. Can you have an appeal of those rulings to us? Particularly when the summary judgment was denied. Why is there appellate jurisdiction for denial? I think there was a Rule 54 that would have entered where this was declared to be a final judgment so that all of these issues could be brought to the court at the same time, as opposed to only dealing with the qualified immunity issues and then possibly having to come up again later. And I think there was an order issued at that time saying that judgment was declared to be a final judgment so that this could all be brought to the attention and consideration. I don't see how you could have a final judgment when there are claims to be tried against both defendants. But Judge, I wasn't involved in the case at that point, but that's my understanding from reviewing the record of how it got here today. Okay. Now, with respect to the negligence claims, Judge, again, we believe that they should have been dismissed on the summary judgment. However, I will admit that the basis for the dismissal is not as great as the basis for the dismissal of the battery claim. But under Louisiana law, in a negligence claim, it's the plaintiff's duty to show that the defendant owed the plaintiff a duty, that there was a breach of the duty, and there was injury caused by the breach of that duty. None of that is found in the complaint. None of that is found in his statement of contested issues of fact. And none of that is found in his declaration filed in opposition to the motion of a summary judgment. So I would suggest to you that his negligence claims must likewise fall because he has failed to come forward with sufficient evidence to show that Officer Black had a duty, breached a duty, and that there were injuries resulted from the duty. As I argued just a moment ago, it appeared to me that the injuries set forth in complaint about in his declaration are the bruises on his arms from his arms being grabbed by Officer Black as he was escorting him from the council chambers outside into the elevator, into the lobby downstairs. And for those reasons, if there's no other questions, I would suggest that Judge Zaney be affirmed with respect to the qualified immunity for Ronald Black and that he be reversed and that judgment be granted to Ronald Black and the city of Gratina on the battery claim and on the negligence claims. Thank you very much. Thank you. All right, Mr. Pendergrast. Thank you. May it please the court, Brett Pendergrast along with Michael Rehlman on behalf of Mr. Tom Haney. Like everyone else in this lawsuit, we hold two positions, both as appellee and as appellant on certain issues. This matter did come before the court pursuant to a Rule 54 judgment after we met with the conference attorney to discuss possible resolution. And what was decided was that piecemeal resolution of this case wasn't in the best interest of judicial economy or efficiency. And so that's why you all have everything before you. You came, met with the conference attorney in the circuit? Yes, yes ma'am. And what's the judgment? Was it? The judgment basically is a final judgment that memorializes Judge Zaney's ruling on the summary judgment. In other words, it is a final judgment. Granting the summary judgment is indicated with respect to the First Amendment claim on. But both defendants still have claims remaining in the district court. Both defendants still have claims. So how can we have a final judgment as to either one of them? Well, you do have a final judgment, certainly, Your Honor, with respect to the claims that have been dismissed against those individuals. I thought a final judgment had to be all claims in all parties. Or at least one or the other. One guy's totally out. But we don't have that. We have two people still in with claims against them. So it neither resolves all claims, nor does it resolve all claims against a party. So how can we have a final judgment? I think you can have a final judgment, Your Honor, pursuant to Rule 54, because that's what we had researched before we filed the motion for the final judgment with respect to Judge Zaney. And that's what our research concluded, was that we were entitled to go ahead and have the court make it into a final judgment if there was no good reason for delay. Just on the qualified immunity issues, correct? No, Your Honor, on all the, basically, the totality of the summary judgment rulings.  what exactly is the injury that your client would be claiming? What would be compensable? Well, Your Honor, we would seek recovery for his deprivation of his First Amendment rights. We would seek compensation for the physical injuries he suffered in the process of the fall, the bruises that he sustained to his arms as he was forced out of the meeting and into the elevator. And we'd also seek, and we asked this court for a review of the punitive damage dismissal as well. So we'd be seeking all of those damages. I'd like to, in order to- Bruises? He didn't have to pay for the ambulance? No, no ma'am. He has received subsequent medical treatment, however, that would be part of his recovery. What do you get treated for for bruises? Not for the bruises, for the back injury, Your Honor. He suffered a rather significant back injury as a result of the fall. If I could turn first to the Jefferson defendant's request that Judge Zaney's ruling on the First Amendment be overturned. I think it's important. I disagree with the issue as framed by a Jefferson Parish issue. In this case, it's a motion for summary judgment. Isn't whether or not it's consistent with Judge Zaney's factual findings to deny qualified immunity. Judge Zaney presented for his motion for summary judgment shouldn't be making factual findings. A motion for summary judgment is not the proper environment for that type of determination. Rather, the issue as I see it is the question is whether or not a reasonable jury viewing the evidence in the light most favorable to plaintiff can conclude that Mr. Roberts violated Mr. Haney's constitutional rights. We agree largely about the law in this matter. The law for speakers in a limited public forum as this was is that they can be subjected to restrictions that are reasonable and viewpoint neutral. That is the major difference here, however. We maintain that Mr. Roberts's restrictions on Mr. Haney's speech were not, in fact, viewpoint neutral. I think that's evident by the comments that Mr. Roberts made during the course of the proceedings. He begins, and I think it's important, therefore, to look actually at the videotape and the recording of the meeting as opposed to however Judge Zaney may choose to label these words. Because what Mr. Roberts says to Mr. Haney is, if you don't believe what Ms. Foshay's comments were, later he says, if you're challenging what she's saying to be accurate or not, then he's going to shut Mr. Haney up. That can be viewed as nothing but a viewpoint restriction. In other words, if he was going to agree with Ms. Foshay, there wasn't going to be a problem. Mr. Haney would have been allowed to complete his comments and finish his speaking. Jefferson Parish suggests that this is off topic or not the proper form, but it's important to remember, and you'll see clearly from the video, how Ms. Foshay got to the point of speaking at this meeting in the first place. Mr. Haney was speaking pursuant to the council rules and the council ordinances. Mr. Roberts interrupted Mr. Haney. Now, that's a direct contradiction and a direct violation of Parish ordinance, which says that council members are not supposed to interrupt speakers doing this comment section. But he did in any way. You mean when he asked to give some of his time to the other speakers? Exactly. When he asked to yield the floor, that was a violation of the Parish ordinances. But Mr. Haney went along with it, because a previous speaker had made the objection about Mr. Roberts interrupting her, and he assured her, OK, well, you're going to get the rest of your time. So Mr. Haney went along with it. Mr. Roberts then called upon Ms. Foshay to basically disagree with Mr. Haney. And therefore, when Mr. Haney went back and was trying to say, no, I'm still right, and Ms. Foshay is wrong, he was not off topic. He was not confrontational. He was going back to his original topic, which is, I'm right. You all accepting money from no-bid contractors as campaign contributions, that's wrong. That's illegal. So there was no question of, oh, well, we're going to declare this now to be the improper forum for you to challenge the parish attorney. Because under that scenario, any chairman of a meeting can cut a speaker off real quickly. All he's got to do is interrupt, regardless of whether or not he's allowed to or not, say, oh, well, you're wrong. And then as soon as the speaker tries to go back and say, no, I'm not wrong, I'm right, well, then the chair declares, oh, well, you're out of water, because now you're arguing. Mr. Roberts is the one who created the argument. Turning to the issue of, is there a city explanation anywhere as to what can and cannot be, what forum and what is allowed just to be able to speak at these? There is no parish ordinances that have been identified that Mr. Haney was in violation of. I mean, there's nothing that says you can speak on these subjects, but not these subjects. This is off-limit, or this is a proper forum, this is not the proper forum. Any type of explanation to a speaker of any type as to what subjects can be discussed before the council? No, Your Honor, there is a public comment forum section where you sign up, you're allowed up to five minutes to speak on that topic. Mr. Haney properly signed up. Other people had signed up on the same topic, although they had a slightly different viewpoint than Mr. Haney. They felt that what the council was doing was wrong, but it wasn't illegal or unethical. Mr. Haney thought what they were doing was wrong, illegal, and unethical. So is that what made the impression that he was being hostile? Because he was calling them, alleging that they were committing illegal acts? Is that where the hostility comes in? Maybe Mr. Roberts may have been viewed that as hostility, Your Honor, frankly. That's what they're saying. I can't see how that's hostility, to be able to go before your elected representatives and tell them that you think they're doing something wrong. Also, with respect to the qualified immunity aspect of that, I would point out that the law is well-established that you cannot make restrictions on speakers that are not viewpoint neutral. As we've pointed out, this matter involves strictly viewpoint. When Jefferson defendants talk about Judge Zaney making a subjective element, I think what Judge Zaney was actually doing was saying it's up for the jury to determine the issue of why. Since the plaintiff had presented evidence to suggest that the why wasn't what Jefferson suggests, but instead was a question of viewpoint, he was saying if it's viewpoint, Roberts can't restrict it. And if Roberts can't restrict it, and the law is clearly established, which it is, he therefore is not entitled to qualified immunity. With respect to the battery claim against Gretna, Gretna maintains that because Mr. Haney was C, is that the deputy or the officer had the right to use force against him. That is strictly and simply untrue. Criminal Procedure Article 220 allows the use of force only when making a lawful arrest or a lawful detention. A lawful arrest involves probable cause. A lawful detention is a Terry stop. Neither one of these factors are present here. This was, in fact, a seizure, but it was not a lawful seizure. And Judge Zaney found it to be a lawful seizure, and I'm going to get to that in a moment relative to our appeal. But there undisputably wasn't probable cause. Did he refuse to leave the podium? No. Is that why Officer Black approached him? Officer Black approached him. Mr. Haney gathered up his material. He started to walk up the hall, up the aisle. As he did so, he was handing some papers to one of the other speakers. Mr. Black then pushed him up the hall. Then he pushed him again. That's what caused him to fall. He then grabbed him by the arms. He then, with both arms holding both of them, forced him out of the council chambers, and then he forced him into the elevator. So there was not only one battery. There were multiple batteries. There was, in addition to the push, there was the grabbing of the arms because a battery is a harmful or offensive contact. This clearly was a harmful and offensive contact to Mr. Haney. And there's simply no justification for it under Louisiana law. Louisiana law requires a lawful arrest. Wasn't he following instructions by the moderator that said, escort this person out of chambers or whatever? Wasn't he just following instructions from a supervisor? But the problem is Mr. Roberts wasn't his supervisor. Mr. Roberts works for the Parish of Jefferson. Mr. Black works for the city of Gretna. Mr. Black made it clear in his deposition, and we cited this in our brief, that Mr. Roberts is not his supervisor. He's not in the chain of command. And instead, he can address concerns to the officer on duty, the officers there to maintain the peace. But Mr. Roberts has no right to give orders to Mr. Black. And what's more, even if he had the authority to give them. That doesn't make any sense. Mr. Roberts was in charge of the meeting. If there's some disturbance in the audience or something, he certainly has authority to tell the security officer, remove whatever's happening here. And this is the situation where Gretna defendants and the court made reference to two cases of Collison and Osborne, where there was an instruction given to an officer to remove people. The only reason those courts, however, granted summary judgment on those claims against the officer is the fact that those orders given by the presiding official were lawful. Those courts determined that, in fact, the presiding officer was correct and was entitled to qualified immunity in finding that the speakers were either off topic, repetitious, or whatever matter, were entitled to be ejected from the proceedings. And what's more, in one of those cases, the plaintiffs didn't even dispute the right of the officer to escort them out. That's not the case here. With respect to the negligence claim, I would point out that previously Gretna defendants had not challenged the pleadings of the plaintiff with respect to stating a negligence claim. There was a motion to dismiss. There was no challenge to that. In fact, there was no challenge in their motion for summary judgment as to the negligence claim. For that reason, we believe they waived the argument. But even if they don't waive the argument with respect to the actual evidence introduced, the question of duty, we don't have to introduce evidence as to the question of duty. The question of duty is a question of law. The duty in this case is, if you've got someone in your custody, you must reasonably maintain their safety. The question of breach of the duty is shown by the video itself, where Mr. Black falls on top of Mr. Haney. We don't believe that Mr. Black intended to fall on Mr. Haney, but he did fall on him as a result of his own negligence. There's also case law that we've cited that indicates failing to maintain one's balance creates also a problem. And that's an indication of negligence. The damages are clear. It resulted in this gentleman falling upon top of Mr. Haney. So we think that establishes the three parts that we have to do to establish a negligence claim. In our role as appellant, I would like to get to the Fourth Amendment issue, because I think this is, in fact, the most interesting question of law presented in this matter. Judge Zaney determined that Mr. Black, Mr. Haney, I'm sorry, was, in fact, seized in this matter. The Gretna defendants agree with the fact that Mr. Haney was seized in this matter. I think the evidence supports the notion, especially viewed in the light most favorable to the plaintiff, that Mr. Haney was seized. We have the chairman of the meeting saying, clearly, remove the gentleman. We then have an in-uniform police officer approaching Mr. Haney, standing by him, and then when he's too slow to be removed, pushing him along and then grabbing him and forcing him out of the chambers. That is a seizure. I don't think there can be any question that Mr. Haney was, in fact, seized by Mr. Black based upon Mr. Roberts' instructions. But the issue is not, that's not the issue. The issue is whether there was probable cause. I agree. And actually, Your Honor, I would agree with you, too, on that. Because there is no probable cause. No one has found probable, Judge Zaney did not find probable cause. Neither one of the defendants have argued that there was probable cause to believe that Mr. Haney committed any crime. What Judge Zaney did, and this is where we believe he seriously erred in this matter, was he determined that probable cause was not necessary for that seizure. There is simply no law to support that position. In fact, the Supreme Court has rejected that notion. In the matter of Dunaway, Supreme Court noted that the long history of this country relative to seizures is, you need either a warrant or you need probable cause. They then note, OK, we got to the Terry situation, and we're going to make a small exception, because it's a less intrusive interference with a person's personal privacy. And they allow for reasonable suspicion to form the basis for a brief Terry stop. This was neither a Terry stop, nor was it an arrest based upon probable cause. It was, however, clearly a seizure. And if you have a seizure in the absence of probable cause, the case law is clear. Was he free to leave? I mean, he was on his way out. Was he free to leave, or was he being detained? Well, I would certainly argue, Your Honor, that when his arms are being grabbed by both arms, and he's being led along, he's not free to go anywhere. And also, Your Honor, Mr. Haney said in his declaration that his plan was to go sit back down and attend the rest of the meeting. So he was not free to stay. He was then continued to be seized and forced into the elevator. The Supreme Court has defined whether or not you're seized, because the question is, is the individual free to ignore the police officer and go about his business? Under no scenario, viewing this videotape and the evidence that has been submitted in this case, can anyone believe that Mr. Haney was free to go about his business? He simply wasn't. Mr. Roberts had ordered him removed. I don't know how you can remove anything from any place without first seizing it and taking control of it, as the nature of removing something. And then Officer Black carried out that order and seized Mr. Haney. I thought he said escort him out. He said remove, Your Honor. Thank you. All right, we have the argument. Oh, wait. Mr. Watson, you have rebuttal. Sorry. Two minutes. Brief rebuttal, Your Honors. Again, because it was mentioned by opposing counsel, the speech in this case was not restricted based on the viewpoint. It was only when he sought to challenge and rebut the opinion of somebody else. And Christopher Roberts, and again, he's not a lawyer, but in his discretion that's afforded to him under the law, he was. Well, what's the difference in viewpoint saying I disagree with someone? Isn't that giving your view that you don't think that person's opinion is correct? Isn't that a viewpoint? Well, in this particular case, I think it was the way in which Mr. Haney raised his paper and sought, again, in the mind of Mr. Roberts to impugn the parish attorney. And he did not believe that that was appropriate for you to rebut specifically what she said. And right or wrong, he's given that ability under the law to make those. What if he'd asked the attorney to rebut what Mr. Haney was saying? Well, in this particular case, that one, it didn't occur. And the parish attorney, this was not the first time this was addressed. The parish attorney came prepared because Mr. Haney had spoke on these issues before. And what the parish attorney was doing there at the request of Mr. Roberts was updating the parish council as to the legality of the issues. And what Mr. Roberts believed, and again, this court and the Supreme Court of the United States in Ashcroft v. Kidd in 2011 said, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments on open legal questions. And Mr. Roberts is not a lawyer, but he thought in his decorum, where he was a moderator, that it was not an appropriate thing to wave your paper in hand and challenge an individual to rebut their opinion. And right or wrong, he's given that ability. And that's why courts have consistently, on summary judgment, granted qualified immunity in these types of cases because of the negative attributes that they have to public discourse and needless and burdensome litigation, as we see in this case, for a minute and 23 seconds while he was allowed to express his opinions. And for those reasons, we respectfully request that this court overturn and reverse the ruling with respect to qualified immunity. Thank you. Thank you. All right, we'll be in recess.